[Cite as *In re J.C.*, 2015-Ohio-4664.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: J.C.

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Sheila G. Farmer, J.

Case No. 14CA23, 14CA24

O P I N I O N

CHARACTER OF PROCEEDING:     Appeal from the Knox County Court of
                             Common Pleas, Juvenile Division Case
                             No. 2111407

JUDGMENT:                    Reversed and Remanded

DATE OF JUDGMENT ENTRY:      November 5, 2015

APPEARANCES:

For Appellee - State of Ohio              For Appellant - J.C.

CHARLES T. MCCONVILLE                     CHARLYN BOHLAND
Knox County Prosecutor                    Assistant State Public Defender
                                          250 East Broad Street, Suite 1400
ANGELICA JARMUSZ                          Columbus, Ohio 43215
Knox County Assistant Prosecutor
117 East High Street, Suite 234
Mount Vernon, Ohio 43050

*Hoffman, J.*

{¶1}   Appellant J.C., a delinquent child, appeals the judgment entries entered by the Knox County Court of Common Pleas, Juvenile Division, denying his motion to dismiss and further classifying him a Tier III Juvenile Sex Offender Registrant. Appellee is the state of Ohio.

## STATEMENT OF THE CASE[1]

{¶2}   On February 10, 2012, Appellant entered an admission to the charge of rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree if committed by an adult.  The victim of the rape was Appellant's younger sister, E.C.

{¶3}   At disposition, the trial court suspended Appellant's commitment to the ODYS for a minimum term of one year and a possible maximum term of until his twenty-first birthday, instead placing Appellant on probation.

{¶4}   On July 27, 2012, the trial court's Journal Entry indicates circumstances resulted in Appellant returning to his family home where the victim, E.C., also resided. The Journal Entry states a safety plan was in place, including an alarm system.  The trial court ordered custody of Appellant returned to his mother and step-father, as the review indicated this was the best placement for Appellant.

{¶5}   On August 14, 2012 Appellant's Probation Officer Mazzari filed a proabion violation with the trial court.   The August 14, 2012 Magistrate's Order indicates Appellant was then removed from the home due to "risk of harm to family members" as he slapped his sister, E.C., in violation of the safety plan.

---

[1] A rendition of the underlying facts is unnecessary for our resolution of this appeal.

{¶6} On August 27, 2012, Probation Officer Mazzari appeared before the trial court and the trial court dismissed the probation violation, finding Appellant knew he made a mistake and agreed to follow the safety plan.

{¶7} The trial court scheduled a review hearing on the matter for April 30, 2013. The trial court journalized the findings of the review hearing via May 1, 2013 Journal Entry,

> Mr. Mazzari reports J.C.'s grades are poor, he is smoking tobacco in the home and lighting small fires in the home, taking things without permission from other family members, and trying to break into locked areas of the home. J.C. has been in sex offender counseling for a year without any progress and remains a moderate risk to reoffend. He continues to yell at his little sister who was the victim of this offense, and continues to scare her.
>
> Mother stated she cannot continue to cope with the current situation. J.C.'s current conduct is beyond her ability to control and she fears for the safety of her family. Mr. Mazzari agrees the current home situation is unsafe.

{¶8} On July 8, 2013, Appellant was admitted to the Village Network pursuant to Court placement and parental agreement, a residential treatment facility, and discharged on July 6, 2014, after completing 363 days. Following discharge from the Village Network, Appellant was returned to the home.

**{¶9}** On August 18, 2014, Appellant's mother filed a motion to revoke probation. The trial court's August 18, 2014 Judgment Entry states Appellant's mother appeared on the motion to revoke probation, alleging:

J.C. took a family members cell phone without permission and downloaded pornography.  He also went upstairs (where he is not suppose [sic] to be) and scared his sister (who was prior victim.) He did not seem to understand how harmful this was to his sister. After these issued [sic] were address [sic] by mother, on July 10, 2014 J.C. wrote a suicide note and made a noose. This was discovered and he has been in a hospital since July 10, 2014 until today. Release notes indicate he should not return directly home for everyone's safety.

**{¶10}** The trial court ordered Appellant removed to detention or Shelter Care to protect the child as he was a risk to himself and others.

**{¶11}** On September 22, 2014, the State filed a motion to amend complaint, to indicate Appellant had a stolen cell phone in his possession and he had used this cell phone to download pornography.

**{¶12}** On October 9, 2014, Appellant admitted to violating the terms of his probation as alleged in the Probation Violation filed on August 26, 2014, as amended on October 8 and 9, 2014.  Specifically, Appellant admitted to "going to the upstairs area of his mother's home where he was not permitted to be and to having in his possession sexually explicit pictures, all in violation of his specific probation rules."  The trial court accepted his plea and again found Appellant a delinquent youth.

{¶13} The trial court imposed the suspended DYS commitment, committing Appellant to the custody of ODYS, granting Appellant credit for time spent in detention. The trial court deferred Appellant's classification as a juvenile sex offender registrant "pending efforts at rehabilitation while committed to the Department of Youth Services."

{¶14} On October 17, 2014, the trial court filed a motion to schedule further dispositional hearing to determine classification status as juvenile offender registrant.

{¶15} On November 3, 2014, the trial court designated Appellant a Tier III Sex Offender/ Child Victim Offender Registrant, not a Public Registry Qualified Juvenile Offender Registrant, and not subject to community notification provisions. The trial court advised Appellant of his notification requirements. Appellant and his mother signed a preprinted statement in open court listing Appellant's registration requirements.

{¶16} Appellant filed an appeal. This Court ordered the matter remanded for the limited purpose of the trial court addressing Appellant's request for recalculation of credit for confinement in the residential treatment facility. The trial court denied Appellant's request.

{¶17} Appellant assigns as error:

{¶18} "I. THE JUVENILE COURT ERRED WHEN IT FAILED TO APPOINT A GUARDIAN AD LITEM TO PROTECT J.C.'S BEST INTERESTS IN VIOLATION OF R.C. 2151.281(A)(2) AND JUV. R. 4(B)(2).

{¶19} "II. THE JUVENILE COURT VIOLATED J.C.'S RIGHT TO DOUBLE JEOPARDY PROTECTIONS WHEN IT IMPOSED MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE, IN VIOLATION OF STATE V. RABER, 134 OHIO ST.3d 350,

2012-OHIO-5636, 982 N.E.2d 684; FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.

{¶20} "III. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED J.C. AS A TIER III JUVENILE OFFENDER REGISTRANT BECAUSE THE CLASSIFICATION PERIOD EXTENDS BEYOND THE AGE JURISDICTION OF THE JUVENILE COURT, IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTIONS 9 AND 16, OHIO CONSTITUTION.

{¶21} "IV. THE JUVENILE COURT ERRED WHEN IT FAILED TO GRANT J.C. CREDIT FOR THE 363 DAYS HE WAS CONFINED AT THE VILLAGE NETWORK IN RELATION TO THE OFFENSE FOR WHICH HE WAS COMMITTED TO THE DYS, IN VIOLATION OF R.C. 2152.18(B); THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTION 16, OHIO CONSTITUTION."

I.

{¶22} In the first assigned error, Appellant argues the trial court erred in failing to appoint a guardian ad litem to represent Appellant's interests herein. We agree.

{¶23} Our standard of reviewing the court's decision whether to appoint a guardian ad litem is the abuse of discretion standard. *In re: Sappington* (1997), 123 Ohio App.3d 448, 454, 704 N.E.2d 339. The Supreme Court has repeatedly defined the term "abuse of discretion" as implying the court's attitude is unreasonable, arbitrary, or unconscionable. See, e.g., *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140

**{¶24}** Ohio Revised Code Section 2151.281(A)(2) requires the juvenile court to appoint a guardian ad litem to protect the child's interests when a conflict exists between the child and the child's parent, guardian or custodian.  The statute reads,

(A) The court shall appoint a guardian ad litem, subject to rules adopted by the supreme court, to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when either of the following applies:

(1) The child has no parent, guardian, or legal custodian.

(2) The court finds that there is a conflict of interest between the child and the child's parent, guardian, or legal custodian.

**{¶25}** Ohio Juvenile Rule 4(B) further provides,

(B) Guardian ad litem; when appointed

The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

(1) The child has no parents, guardian, or legal custodian;

(2) The interests of the child and the interests of the parent may conflict;

(3) The parent is under eighteen years of age or appears to be mentally incompetent;

(4) The court believes that the parent of the child is not capable of representing the best interest of the child.

(5) Any proceeding involves allegations of abuse or neglect, voluntary surrender of permanent custody, or termination of parental rights as soon as possible after the commencement of such proceeding.

(6) There is an agreement for the voluntary surrender of temporary custody that is made in accordance with section 5103.15 of the Revised Code, and thereafter there is a request for extension of the voluntary agreement.

(7) The proceeding is a removal action.

(8) Appointment is otherwise necessary to meet the requirements of a fair hearing.

**{¶26}** As these statutes are mandatory, the failure of a court to appoint a guardian ad litem when these provisions require such an appointment constitutes reversible error. *In re Spradlin* 140 Ohio App.3d 402, 747 N.E.2d 877 (2000). Further, the absence of an objection does not preclude a reversal due to the Juvenile Court's failure to appoint a guardian when required under R.C. 2151.281(A)(2) or Juvenile Rule 4(B). *In re K.B.,* 170 Ohio App.3d 121, 2007-Ohio-396, citing *In re Etter,* 134 Ohio App.3d 484, 731 N.E.2d 694 (1998).

**{¶27}** Juv. R. 4 requires the appointment of a guardian ad litem where there is a possibility of conflict, while the statute requires appointment only if the court finds there is an actual conflict of interest. Therefore, the relevant question on appeal is whether the record reveals an actual or potential conflict of interest which required the appointment of a guardian ad litem.

**{¶28}** Appellant asserts a guardian ad litem should have been appointed at the probation violation hearing as at least a potential conflict had arisen between him and his mother. The State asserts Appellant was represented by counsel; therefore, the trial court did not err in failing to appoint a guardian, and there was no presumed conflict between Appellant and his mother.  The State further notes mother made several comments of concern for Appellant's best interests.

**{¶29}** R.C. 2151.281(H), and Juv. R. 4(C) permit an attorney to serve both as counsel and as guardian ad litem for a child in a juvenile court proceeding, provided the court makes an explicit dual appointment and no conflicts arise in the dual representation. Here, the court did not order dual representation.  Further, Appellant's counsel stated on the record at the October 27, 2014 classification hearing,

> MR. DANKOVICH: Your Honor, just for the record, I would have been objecting to the classification of [J.C.] at all at this hearing; however, [J.C.] does not want me to object to that.  He wants to be classified at this hearing, so I guess I would just move forward without objection.
>
> THE COURT: All right. We'll duly note your comments, Mr. Dankovich.

Tr. at 5-6

**{¶30}** The Supreme Court has recognized the roles of guardian ad litem and of attorney are not always compatible, because they serve different functions. The role of a guardian ad litem is to investigate the juvenile's situation and to ask the court to do what the guardian determines to be in the child's best interest. The role of the attorney

is to zealously represent the client within the bounds of law. *In re: Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 479 N.E.2d 257.

**{¶31}** At his adjudication hearing, J.C. appeared with defense counsel. J.C.'s mother was present and the juvenile court did not appoint a guardian ad litem to represent J.C.'s best interests. During the hearing, J.C.'s probation officer informed the court there were "issues with just arguing, being not disrespectful, but willing to stand toe to toe to his mother and not allowing her to be the parent in the home." (10/9/2014 T.pp.15-16)

**{¶32}** This Court in *In re: Sargent*, 5th Dist. Licking App. No. 00CA91 and 00CA92, addressing a similar factual situation found at least a potential conflict where a parent struggles with being the parent of the offender and the victim. This Court held,

> Unlike the mother in Shaw, Carla does not appear to be in an overtly adversarial relationship with appellant; in fact, as the trial court noted in ruling on appellant's objection, she made several positive comments. Nonetheless, no further inquiry was pursued by the magistrate as to Carla's obvious dual concern for her daughter, as manifested in particular by Carla's desire to "look out" for her. "A parent may clearly have her own agenda, or be advocating her own best interest, which may or may not also be the child's." *In re Howard* (1997), 119 Ohio App.3d 201, 206. See also, *In re McQuitty* (May 5, 1986), Butler App. No. CA85-04-016, unreported. While we expressly decline to adopt a bright-line rule necessitating the appointment of a guardian ad litem in every situation where a parent is the custodian of both the victim and the alleged juvenile

perpetrator, we are persuaded under the facts in this case that the possibility of conflict of interest was present to the extent that the trial court abused its discretion in failing to make an appointment pursuant to R.C. 2151.281(A), prior to acceptance of the pleas.

**{¶33}** Here, Appellant's mother made the report of Appellant's probation violation. She is also the mother of the victim, and resided with both Appellant and the victim herein. She reported he was taking things from family members and breaking into restricted areas of her home. In addition, she reported he continued to yell at the victim, who resided in the home, scaring her. She stated she could not "continue to cope with the current situation," Appellant's conduct was "beyond her ability to control" and she "fears for the safety of her family."

**{¶34}** We find under the facts presented, there was a clear possibility of conflict of interest between Appellant and his mother and the Appellant's attorney could not properly serve in a dual capacity as guardian ad litem. We find the trial court abused its discretion in failing to make an appointment of a guardian ad litem pursuant to R.C. 2151.281(A) prior to accepting the plea herein.

**{¶35}** The first assignment of error is sustained.

II, III, and IV.

**{¶36}** In light of our analysis and disposition of Appellant's first assigned error, we find Appellant's second, third and fourth assigned errors premature.

{¶37} The judgment of the Knox County Court of Common Pleas is reversed, and the matter remanded to the trial court for further proceedings in accordance with the law and this opinion.


By: Hoffman, J.

Gwin, P.J.  and

Farmer, J. concur